FLOY LOUISE PRINCE v. MERRIWELL T. SMITH AND JAMES O. WALDEN, D/B/A S & W FOOD CENTER.

(Filed 24 May, 1961.)

1. **Food §§ 1, 2—**

The implied warranty of wholesomeness for human consumption in the sale of food in a sealed container usually obtains only between the parties to the contract of sale, and ordinarily a consumer may hold the manufacturer liable only on the ground of negligence, subject to certain exceptions.

**2. Food § 2—**

The implied warranty that a bottled beverage is fit for human consumption will not be extended to include the safety of the container when the evidence shows that the bottle burst in the hands of the purchaser some 18 hours after it had been purchased from defendant retailer, during which time it had been subjected to cold during its transportation to plaintiff's apartment, and then to heat during its storage in plaintiff's apartment.

APPEAL by plaintiff from *Hobgood, J.*, January, 1961 Term, CUMBERLAND Superior Court.

Civil action instituted by the plaintiff to recover for personal injury resulting from the explosion of a bottled drink — Coca Cola. The plaintiff alleged she purchased a carton containing six bottles of Coca Cola from the defendants' self-service grocery store. The defendants' "warranty to her that said Coca Cola was safe and fit for human consumption and handling, . . . and unknown to the plaintiff . . . a bottle of the said product contained defects which caused the said bottle to explode when being handled by the plaintiff in the usual and customary manner. . . ." She further alleged that as a result of the explosion she sustained a painful and permanently disfiguring injury.

The plaintiff's evidence disclosed the following: About 3:30 p.m. on November 17, 1956, while a customer in defendants' self-service store, she purchased a carton (six bottles) of Coca Cola and other groceries, all of which she placed in her automobile and drove directly home, a distance of about four miles. The weather was cold. She placed the carton on the drainboard near the kitchen sink and about three feet from the stove. The apartment in which she, her husband and two small children lived consisted of three rooms in addition to the kitchen. An oil heater located away from the kitchen furnished heat for the apartment. The temperature was kept at 70 to 75 degrees.

The plaintiff, her husband and children left home about 5:30 and returned after midnight. The following morning about 9:15 she went to the kitchen where the carton still remained as she had left it. Before transferring the bottles from the carton to the Frigidaire, she undertook to wipe dust from them with a cloth. The second or third bottle she removed from the carton exploded in her hand, throwing fluid and glass all over the kitchen, including the ceiling. A piece of glass cut her cheek and lip, causing severe pain and leaving a permanent and unsightly scar.

The defendants introduced, over plaintiff's objection, evidence as to the process followed by the manufacturer in making and testing the bottles and by the bottling company in cleansing and filling them.

At the close of all the evidence the court entered judgment of compulsory nonsuit, from which the plaintiff appealed.

*Butler, High and Baer, Charles E. Noell, for plaintiff, appellant.*
*Quillin, Russ & Worth, for defendants, appellees.*

HIGGINS, J.  This differs from other exploding bottle cases which have been reviewed by this Court. Most prior actions were in tort against the bottling company for injury proximately caused by the company's negligence. *Styers v. Bottling Co.,* 239 N.C. 504, 80 S.E. 2d 253; *Davis v. Bottling Co.,* 228 N.C. 32, 44 S.E. 2d 337; *Enloe v. Bottling Co.,* 208 N.C. 305, 180 S.E. 582; *Lamb v. Boyles,* 192 N.C. 542, 135 S.E. 464; *Dail v. Taylor,* 151 N.C. 284, 66 S.E. 135.

This action is against the retailer who sold to the plaintiff. The action is in contract, based on alleged breach of implied warranty that the Coca Cola was fit for human consumption as a beverage, and safe for handling. Ordinarily, for breach of implied warranty, the seller is liable only to a party to the contract of sale. A cause of action by the injured party otherwise than against the seller must be based on negligence. *Wyatt v. Equipment Co.,* 253 N.C. 355, 117 S.E. 2d 21. Our court recognizes certain exceptions and variations to the general rule. The manufacturer may attach to the product a warranty to the ultimate consumer. *Simpson v. Oil Co.,* 217 N.C. 542, 8 S.E. 2d 813. A manufacturer may be liable under certain circumstances if he sells an article likely to cause injury in its ordinary use because of its inherently dangerous character, if he fails to guard against hidden defects and to give notice of concealed danger. *Tyson v. Mfg. Co.,* 249 N.C. 557, 107 S.E. 2d 170. In some of the cases liability on the basis of breach of implied warranty and for negligence seem to shade into each other. See the many cases cited in *Wyatt v. Equipment Co., supra; Lemon v. Lumber Co.,* 251 N.C. 675, 111 S.E. 2d 868; *Tyson v. Mfg. Co., supra;* N. C. Law Review, Vol. 30, p. 191, *et seq.,* (1951-52).

Because of the danger to life and health, the manufacturer and packer of foods and the bottler of beverages intended for human consumption, by offering them for sale, impliedly warrant the fitness of their products for such use. As pointed out, however, the warranty extends no further than the parties to the contract of sale. *Thomason v. Ballard & Ballard Co.,* 208 N.C. 1, 179 S.E. 30. For breach of the warranty, the injured party may sue his retailer who, in turn, may sue the wholesaler or jobber, and he the manufacturer, packer, or bottler upon whom finally rests the primary responsibility. N. C. Law Review, Vol. 32, 1953-54, p. 351, *et seq.*

"The deliberate policy of carrying the responsibility back to the manufacturer who is best able to meet it is indicated by a few decisions which have refused to find any warranty from a wholesaler to the consumer. Less comprehensible are the decisions of three courts which have confined the manufacturer's warranty to the food or beverage inside of a container, and have refused to find any warranty that the container itself will not explode in the customer's face." To the above is added a footnote: "The distinction of course makes no sense. One may speculate that these courts were uneasy about the proof that the plaintiff had not damaged the container himself." Prosser on Torts, 2d Ed., Ch. 17, p. 509; *Loch v. Confair*, 372 Pa. 212, 93 A. 2d 451; *Haller v. Rudmann*, 249 App. Div. 831, 292 N.Y.S. 586; *Mahoney v. Shaker Square Beverages*, 108 N.E. 2d 281 (Ohio).

Implied warranty that beverage is fit for human consumption is not applicable to "a bottle or container which may become weakened by the manner and method in which it is handled." *Soter v. Griesedieck Western Brewery Co.*, 200 Okla. 302, 193 P. 2d 575, 4 A.L.R. 2d 458.

Research has not disclosed any case in which this Court has extended the implied warranty of fitness to a container in which the product comes from the producer. The wisdom of extending implied warranty beyond the present limit recognized by the Court is at least debatable. In this case the bottle had been in the hands of the plaintiff, first in cold weather, transported by automobile four miles to her apartment, then stored in the kitchen for 18 hours, after which it gave way while the plaintiff was removing dust from it by rubbing it with a cloth. The facts leave the legitimate inference the explosion resulted from an increase in the pressure while it was in the plaintiff's possession. She had been familiar with bottled Coca Cola for years. Evidently she knew as much about the risk of breakage as the defendants.

A bottle filled with Coca Cola sells for less than ten cents. If implied warranty against breakage is attached to the sale, how long does it continue after the purchaser has taken complete control? When a customer buys food or beverage there is an implied warranty that it is not dangerous to health. Only the evil effect after use discloses the danger. Then it is too late to take precautionary measures. On the other hand, the danger that a glass bottle filled with Coca Cola under pressure may explode, is obvious. The purchaser buys with that knowledge and must deal with it accordingly. We hold that under the facts of this case implied warranty did not cover the bottle.

The judgment of nonsuit is

Affirmed.