CREED v. SMITH

[222 N.C. App. 330 (2012)]

---

JAMES D. CREED, Plaintiff-Appellant v. BRETT A. SMITH and CAROLYN JEANETTE WYATT, Defendants-Appellees

No. COA11-1469

(Filed 21 August 2012)

**Insurance—exhaustion of liability limits—tender rather than payment—motion to compel arbitration**

The trial court erred by denying plaintiff's motion to compel arbitration in an action arising from an automobile accident where the issue was whether Nationwide's (the insurer of the other driver) liability insurance was exhausted when plaintiff requested arbitration. Exhaustion occurs upon tender rather than payment.

Appeal by Plaintiff from order entered by Judge Timothy S. Kincaid in Superior Court, Catawba County. Heard in the Court of Appeals 22 May 2012.

*Patterson Harkavy LLP, by Burton Craige and Narendra K. Ghosh; and Ramsay Law Firm, P.A., by Martha L. Ramsay, for Plaintiff-Appellant.*

*Davis and Hamrick, L.L.P., by H. Lee Davis, Jr.; and Frazier, Hill & Fury, R.L.L.P., by Torin Lane Fury, for Unnamed Defendants-Appellees Liberty Mutual Insurance Company and Integon National Insurance Company.*

*Brown, Moore & Associates, PLLC, by Jon R. Moore; and White & Stradley, LLP, by J. David Stradley, for North Carolina Advocates for Justice, amicus curiae.*

*McAngus, Goudelock & Courie, PLLC, by John P. Barringer and Jeffrey B. Kuykendal, for North Carolina Association of Defense Attorneys, amicus curiae.*

McGEE, Judge.

James D. Creed (Plaintiff) filed a complaint against Brett A. Smith (Mr. Smith) and Carolyn Jeanette Wyatt (Defendants) on 30 November 2010 in Catawba County Superior Court. Plaintiff amended his complaint on 4 February 2011. Plaintiff's complaint alleged that Mr. Smith negligently caused a motor vehicle collision that occurred on 2 February 2008. Plaintiff's underinsured motorist (UIM) insurance carrier, Integon National Insurance Company (Integon), filed an answer on 8 April 2011. Plaintiff's employer's UIM insurance provider, Liberty Mutual Insurance Company (Liberty), filed an answer on 15 June 2011. Plaintiff filed a motion to compel arbitration between himself, Integon and Liberty on 29 June 2011. The trial court heard Plaintiff's motion on 1 August 2011, and entered an order denying Plaintiff's motion on 15 August 2011. Plaintiff appeals.

## I. Factual Background

Plaintiff was driving a vehicle owned by his employer on \2 February 2008 when he was involved in a collision with Mr. Smith. The record on appeal shows that Mr. Smith was insured under a $50,000.00 insurance policy from Nationwide Mutual Insurance Company (Nationwide). Plaintiff's employer held a $1,000,000.00 policy with Liberty that provided UIM coverage to Plaintiff because Plaintiff was operating the vehicle "in the course and scope of his employment." Plaintiff additionally held a $50,000.00 UIM policy with Integon that was also in effect at the time of the accident.

The provisions of the Liberty UIM policy indicated that Liberty would pay UIM coverage if (1) "[t]he limit of any applicable liability bonds or policies have been exhausted by payments of judgments or settlements; or" (2) if "[a] tentative settlement has been made between an 'insured' and the insurer" of an underinsured vehicle, Liberty "[has] been given prompt written notice of such tentative settlement[,]" and Liberty "[a]dvance[s] payment to the 'insured' in an amount equal to the tentative settlement within 30 days after receipt of notification." The Liberty UIM policy includes an exclusion provision that precludes coverage for "[a]ny claim settled by the 'insured' or any legal representative of the 'insured' without [Liberty's] consent." This

CREED v. SMITH

[222 N.C. App. 330 (2012)]

exclusion does not apply, however, to settlements reached in compliance with the provision requiring notice and advance payment.

Finally, Liberty's UIM policy includes an arbitration provision governing when the insured may demand arbitration. The policy states that if Liberty and the insured (1) "disagree whether the 'insured' is legally entitled to recover damages from the owner or driver of an 'uninsured motor vehicle,' " or (2) "do not agree as to the amount of damages that are recoverable by that 'insured,' then matter may be arbitrated." The insured may demand arbitration, and if the insured decides not to arbitrate, "[Liberty's] liability will be determined only in an action against [Liberty]."

Integon's UIM policy is substantively the same as Liberty's UIM policy as it pertains to the present case. Integon's UIM policy states that Integon will pay UIM coverage "only after the limits of liability under any applicable liability bonds or policies have been exhausted by payments of judgments or settlements," unless Integon is (1) "given written notice in advance of settlement between an insured and the owner or operator of the underinsured vehicle[,]" and (2) Integon "[c]onsent[s] to advance payment to the insured in the amount equal to the tentative settlement." Integon's exclusion provision precludes UIM coverage if the insured settles a claim against the underinsured driver without consent from Integon. However, the exclusion does not apply if the underinsured motorist and the liability insurer reach a settlement following written notice to Integon and Integon does not "advance payment to the insured in an amount equal to the tentative settlement within thirty days[.]" Integon's UIM policy also includes an arbitration provision which states if Integon and the insured disagree on "[w]hether that insured is legally entitled to recover compensatory damages from the owner or driver of an uninsured motor vehicle or underinsured motor vehicle[,]" or "[a]s to the amount of such damages[,]" the insured may demand arbitration.

Defendants' counsel notified Plaintiff's counsel on 26 April 2011 that Nationwide had tendered its liability limits of $50,000.00 in return for a covenant not to enforce judgment with Plaintiff. Plaintiff's counsel notified Liberty and Integon of the tender on 12 May 2011. Six days later, on 18 May 2011, Plaintiff requested binding arbitration with Liberty and Integon. Liberty advanced $50,000.00 to Plaintiff's counsel on 9 June 2011 to preserve its subrogation rights, and Plaintiff's counsel returned Nationwide's $50,000.00 payment. Plaintiff filed his "motion to compel binding arbitration and stay further proceedings" on 29 June 2011. The trial court denied Plaintiff's

motion on 15 August 2011, finding that the UIM policies were not applicable because the liability insurer's policy had not been "exhausted" under N.C. Gen. Stat. § 20—279.21.

## II.  Issue on Appeal

The sole issue raised on appeal is whether the trial court erred by denying Plaintiff's motion to compel arbitration on the basis of a determination that Nationwide's liability insurance limits had not been "exhausted" for the purposes of N.C. Gen. Stat § 20-279.21 and the UIM insurance policies of Liberty and Integon.

## III.  Standard of Review

We consider *de novo* the issue of whether Plaintiff's motion to compel arbitration was properly dismissed. *See Raspet v. Buck*, 147 N.C. App. 133, 136, 554 S.E.2d 676, 678 (2001) ("[A] trial court's conclusion as to whether a particular dispute is subject to arbitration is a conclusion of law, reviewable *de novo* by the appellate court."); *see also Register v. White*, 358 N.C. 691, 693, 599 S.E.2d 549, 552 (2004) ("Questions concerning the meaning of contractual provisions in an insurance policy are reviewed *de novo* on appeal.").

## IV.  Exhaustion of Liability Insurance

Plaintiff argues that the trial court erred by denying his motion to compel arbitration. Plaintiff contends that Nationwide's liability insurance was exhausted on 26 April 2011, meaning that Liberty's and Integon's UIM coverage was applicable when Plaintiff requested binding arbitration. Upon review of the relevant law, we find that Nationwide's liability insurance was exhausted on 26 April 2011, and that the trial court improperly dismissed Plaintiff's motion to compel arbitration.

N.C. Gen. Stat. § 20-279.21(b)(4) states the following:

> Underinsured motorist coverage is deemed to apply when, by reason of payment of judgment or settlement, all liability bonds or insurance policies providing coverage for bodily injury caused by the ownership, maintenance, or use of the underinsured highway vehicle have been exhausted. Exhaustion of that liability coverage for the purpose of any single liability claim presented for underinsured motorist coverage is deemed to occur when either (a) the limits of liability per claim have been paid upon the claim, or (b) by reason of multiple claims, the aggregate per occurrence limit of liability has been paid.

N.C. Gen. Stat. § 20-279.21(b)(4) (2011). In *Register*, our Supreme Court unambiguously interpreted N.C. Gen. Stat. § 20-279.21(b)(4) to mean that "[e]xhaustion occurs when [a] liability carrier has tendered the limits of its policy in a settlement offer or in satisfaction of a judgment." *Register*, 358 N.C. at 698, 599 S.E.2d at 555. In considering the meaning of the word "tender," this Court has previously relied upon *Black's Law Dictionary*, which defines "tender" as "[a]n unconditional offer of money or performance to satisfy a debt or obligation[.]" *Black's Law Dictionary* 1479 (7th ed. 1999); *see also Morrison v. Public Serv. Co. of N.C.*, 182 N.C. App. 707, 710-11, 643 S.E.2d 58, 61-62 (2007).

Further, the record on appeal in *Register* shows that our Supreme Court intended to indicate that exhaustion occurs upon tender, rather than upon payment, of a liability insurer's policy limit. In *Register*, the Supreme Court indicated that the "liability carrier, State Farm, tendered its liability limits of $50,000.00 on 8 August 2001." *Register*, 358 N.C. at 692, 599 S.E.2d at 551. Then, "[i]n a letter to Farm Bureau dated 24 September 2001, plaintiff demanded arbitration pursuant to the UIM provision in Mr. Register's insurance policy." *Id.* From a review of the record in *Register*, it appears that actual payment by the liability insurer did not occur until at least 8 October 2001, when the plaintiff signed a "Settlement Agreement and Covenant Not To Enforce Judgment," which was "[f]or and in consideration of the sum of $50,000.00, the receipt of which [thereby was] acknowledged." Nonetheless, the trial court found that "plaintiff's right to demand arbitration of her UIM claim could not have arisen prior to 8 August 2001, when defendant White's insurance company tendered the full limits of its policy[,]" meaning that the "plaintiff's 24 September 2001 demand for arbitration fell within the three-year 'time-limit' referenced in the policy[.]" *Register*, 358 N.C. at 701, 599 S.E.2d at 556. Had the Supreme Court in *Register* held that exhaustion had occurred upon payment of the liability policy rather than tender, the plaintiff's 24 September 2001 demand for arbitration would have occurred before exhaustion and would have been untimely.

We are bound by our Supreme Court's interpretation of N.C. Gen. Stat. § 20-279.21(b)(4) and we therefore hold that the limits of Nationwide's liability policy were exhausted on 26 April 2011, when Nationwide tendered payment of $50,000.00 to Plaintiff. Accordingly, Plaintiff's 18 May 2011 written request for binding arbitration occurred at a time when Plaintiff's right to UIM arbitration was available under both N.C. Gen. Stat. § 20-279.21 and under the terms of Liberty's and Integon's UIM policies.

CREED v. SMITH

[222 N.C. App. 330 (2012)]

## V. Commitment to Follow Supreme Court Interpretation

Defendants correctly point out that our Supreme Court has interpreted "exhaustion" differently in previous decisions. *See Brown v. Lumbermens Mut. Casualty Co.*, 326 N.C. 387, 396, 390 S.E.2d 150, 155 (1990) (finding that if an insurer "merely tenders its limits without obtaining a settlement of any claim for its insured, a strong argument can be made that it has neither 'exhausted' its policy limits nor fulfilled its fiduciary duty to discharge its policy obligations[.]"). Defendants also assert that the plain language of N.C. Gen. Stat. § 20-279.21(b)(4) uses the word "paid" rather than "tendered" to define when exhaustion occurs for the purpose of determining when UIM insurance policies apply. *See* N.C. Gen. Stat. § 20-279.21(b)(4) ("Exhaustion . . . is deemed to occur when either (a) the limits of the liability per claim have been *paid* upon the claim, or (b) by reason of multiple claims, the aggregate per occurrence limit of liability has been *paid*." (emphasis added)).

Nonetheless, a straightforward application of the Supreme Court's unambiguous language in *Register* clearly demonstrates that N.C. Gen. Stat. § 20-279.21(b)(4) should be interpreted to mean that "[e]xhaustion occurs when [a] liability carrier has tendered the limits of its policy in a settlement offer or in satisfaction of a judgment." *Register*, 358 N.C. at 698, 599 S.E.2d at 555. "[I]t is not our prerogative to overrule or ignore clearly written decisions of our Supreme Court." *Kinlaw v. Long Mfg.*, 40 N.C. App. 641, 643, 253 S.E.2d 629, 630, *rev'd on other grounds*, 298 N.C. 494, 259 S.E.2d 552 (1979); *see also Bray v. N.C. Dep't of Crime Control and Pub. Safety*, 151 N.C. App. 281, 285, 564 S.E.2d 910, 913 (2002) (holding that it is not the prerogative of the North Carolina Court of Appeals to reconsider the North Carolina Supreme Court's application of a gross negligence standard for an officer in pursuit) (citations omitted).

Finding that Nationwide's policy was exhausted at the time of Plaintiff's request for binding arbitration, this Court need not consider the additional issues presented by Plaintiff. In accordance with the UIM polices and N.C. Gen. Stat. § 20-279.21, exhaustion of Nationwide's liability policy allowed plaintiff to "make a written demand for arbitration" to resolve a disagreement with the UIM insurers over Plaintiff's legal entitlement to recover or the amount of damages recoverable. We find, therefore, that the trial court erred by denying Plaintiff's motion to compel arbitration.

Reversed.

Judges STEELMAN and ERVIN concur.